**NEW YORK TECHNICAL INSTITUTE OF
MARYLAND, Inc. v. LIMBURG et al.**

No. 4564.

United States District Court
D. Maryland, Civil Division.

Nov. 30, 1949.

Eli Frank, Jr., Baltimore, Md., Howard H. Conaway (Frank, Skeen & Oppenheimer), Baltimore, Md., for plaintiff.

Bernard J. Flynn, U. S. Atty., Baltimore, Md., C. Ross McKenrick, Asst. U. S. Atty., Baltimore, Md., D. Vance Swann, Atty., Dept. of Justice, Washington, D. C., Richard N. Ivins, Atty., Dept. of Justice, Washington, D. C., Edward E. Odom, Sol., Veterans Administration, Washington, D. C., George P. Hughes, Associate Sol., Veterans Administration, Washington, D. C., David A. Turner, Asst. Associate Sol., Veterans Administration, Washington, D. C., Arthur C. Carley, Atty., Veterans Administration, Washington, D. C., for defendants.

CHESNUT, District Judge.

This case arises under the Servicemen's Readjustment Act of June 22, 1944, as amended, 38 U.S.C.A. §§ 701(f), 697(a) and 705. Among other benefits for veterans, it authorized the Administrator to enter into contracts or agreements with private or public agencies for education and vocational rehabilitation of veterans. The Administrator was also authorized to make regulations. Veterans' Regulation Numbered 1(a) Part VIII, § 9, 58 Stat. p. 290, 38 U.S.C.A. note following section 743.

Pursuant thereto he published a regulation effective July 1, 1948,[1] and later amended December 22, 1948 which, so far as material to this case, provided in effect that if the school was established subsequent to June 22, 1944 (the date of enactment of the Servicemen's Act) and had in its enrollment of students in a particular course a majority of veterans, the tuition charged to be paid by the government for the veterans must be determined as the result of negotiation of a contract between the Administrator or his Deputies and the school, after the submission by the school of cost data; and the contract rates should not exceed the rates determined by the Veterans Administration to be fair and reasonable.

The plaintiff in this case was a school operating in Baltimore City for vocational training. In 1948 it had an enrollment of 1,500 students, 1,495 of whom were veterans. On June 18, 1948 it wrote to the Manager of the Baltimore Regional Office of the Veterans Administration submitting certain data with regard to the date of its organization, and requesting a ruling that the regulation in question did not apply to it and therefore it was not obliged to submit cost data as the basis for negotiation of a contract prescribing its tuition rates, but was entitled to charge its previous customary prevailing rates because, as it alleged, it had been operating in Baltimore since 1942. On July 29, 1948 the then Chief of the Training Facilities Section of the Baltimore Office replied to the effect that the regulation did not apply to the plaintiff; but a very few days thereafter this ruling was rescinded by the Acting Chief of Vocational Rehabilitation of the Regional Office, and in further correspondence the later position was maintained by the Regional Manager after additional evidence had been submitted by the school. Thereafter the plaintiff appealed to the Central Office of the Veterans Administration in Washington and, under date of October 20, 1948, it was finally advised by A. H. Monk, Director Training Facilities Service for Vocational Rehabilitation and Educa-

---

1. See Federal Register, Vol. 13, p. 2695. No. 98, May 19, 1948, and as amended December 22, 1948.

tion (to whom authority had been delegated by the Administrator), that after full consideration of all the evidence submitted the Veterans Administration ruled that the plaintiff was "a new school established subsequent to June 22, 1944" and was therefore subject to the regulation. The opinion was based upon the stated grounds (1) that the New York Technical Institute, a privately owned institution established prior to June 22, 1944, ceased operations as an educational institution in 1944; and (2) that the New York Technical Institute of Maryland, Inc., which was established in May, 1946 is legally a new institution by virtue of its incorporation, name and acquisition of new facilities for educational purposes. There was also included in the letter a statement that if the plaintiff decided to submit cost data and negotiate a contract there might be included in the contract a provision to the effect that if the regulation was held invalid in a then pending litigation in Washington "or in any similar suit filed during the term of this contract" the rates payable under the contract should be those in effect as to all students as of July 1, 1948. Thereafter the plaintiff entered into a contract with the Veterans Administration as required by the regulation providing for rates of tuition, as I understand it, less than those in effect on July 1, 1948 and therefore unsatisfactory to the plaintiff.

On May 24, 1949 the plaintiff filed its suit in the above case in this court. The defendants named are four Regional Officers of the Veterans Administration in Baltimore, serving under appointment from and subject to directions from the Central Office of the Veterans Administration in Washington. The complaint sets out somewhat more fully the developing situation heretofore stated and copies in full the regulation referred to. It alleges as a fact that the plaintiff's school was established prior to June 22, 1944. It does not attack the validity of the regulation but does contend that the plaintiff was not subject to the regulation and that the determination of the Veterans Administration to the contrary was "illegal, discriminatory, arbitrary, capricious and wrongful". The complaint further formally alleges that the plaintiff entered into the contract mentioned because it was coerced to do so in that it had an organized and operating school with facilities and supplies acquired at considerable cost and could not afford to abandon its operations. The complaint does not allege any failure of the Veterans Administration to pay vouchers in accordance with the rates fixed by the contract. While it does not expressly appear in the complaint, it is my understanding that the complaint was filed at the end of the scholastic year and it has been stated by counsel, I believe, that the plaintiff corporation has now dissolved.

It is important to note precisely what the plaintiff prays for in this case. Shortly stated, it is (1) a declaratory decree that the plaintiff's school was established prior to June 22, 1944; and that the plaintiff is not subject to the regulations; (2) that a mandatory injunction be issued against the four defendants (a) directing them to comply with the regulations above mentioned (on the basis contended for by the plaintiff); (b) enjoining them from refusing to make payments to the plaintiff for tuition fees at its rates prevailing on July 1, 1948 before the making of the contracts referred to and (c) restraining them from requiring the plaintiff to enter into unauthorized contracts with the Veterans Administration.

The defendants have filed a motion to dismiss the complaint on the grounds that the court is without jurisdiction to grant the relief prayed for; and because defendants are subordinate officials of the Veterans Administration without authority to take the actions prayed for, and therefore, if the court has jurisdiction at all, the Administrator of Veterans Affairs, who is not joined as a defendant in the suit, is an indispensable party.

After hearing and considering the very helpful oral and written arguments of counsel I have reached the conclusion of law that the motion to dismiss the complaint must be granted for the following reasons: (1) The court does not have the authority to issue the mandamus or mandatory injunction prayed for; (2) the de-

claratory relief requested is in essence a finding of fact contrary to that made by the Administrative Department and in the particular case is not within the scope of judicial review; (3) if the court otherwise had the authority to review and reverse the Administrative finding of fact, it would be necessary to effectively include among the defendants the Veterans Administrator who is an indispensable party but who has not been sued and apparently could not be sued effectively in Maryland; (4) because the case is in effect a suit against the United States without its consent.

At the outset of the discussion it is well to bear in mind what is the real nature of the plaintiff's complaint and the relief it seeks. In essence it wishes to be paid by the United States for tuition furnished to veterans at a rate higher than that provided for in the contract that it has made. Therefore what it is really seeking to obtain is the payment of a sum of money from the public treasury. Instead of suing the United States in the Court of Claims, or in this court under the Tucker Act, 28 U.S.C.A. § 1346, plaintiff seeks to accomplish its purpose indirectly by asking the court to require subordinate officials of the Veterans Administration to make certain payments of money to it. It should also be noted that the relief prayed for against these subordinate officials is not to enjoin them from doing some positive act which would injure the plaintiff's property or interfere with the exercise of its rights, but the court is asked to order them to do something which they have been instructed not to do by their superior officer in Washington, and which, if done by them, would further benefit the plaintiff.

In my opinion the prayer for declaratory judgment in this case presents an issue which is beyond the scope of judicial review. Sec. 705 provides "All decisions rendered by the Administrator of Veterans' Affairs under the provisions of sections 701–703 * * * of this title * * * or the regulations issued pursuant thereto, shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision." Perhaps the principal argument of the plaintiff's counsel is that § 705 is not applicable to this case, and therefore this court does have the power of judicial review of the administrative determination by reason of § 10 of the Federal Administrative Procedure Act, 5 U.S.C.A. § 1009. But this contention is not sound. It is based on the argument (1) that section 701(f) giving veterans the benefit of education and vocational rehabilitation "was adopted subsequent to the date of the enactment of section 705" (making administrative decisions not reviewable) "and with no intention that section 705 should be applicable"; (2) that § 705 was meant to apply only to gratuities granted by the Government through the Veterans Administration and that the benefits given in § 701(f) are not within this classification. This contention is untenable. Sec. 701(f) was enacted June 22, 1944 as a part of the Servicemen's Readjustment Act, 58 Stat. p. 287. Included in that Act, 58 Stat. p. 300, title VI, § 1500, was the following provision which is now sec. 697(a) of title 38: "Sec. 1500. Except as otherwise provided in this Act, the administrative, definitive, and penal provisions under Public, Numbered 2, Seventy-third Congress, as amended * * * shall be for application under this Act. For the purpose of carrying out any of the provisions of Public, Numbered 2, as amended, and this Act, the Administrator shall have authority to accept uncompensated services, and to enter into contracts or agreements with private or public agencies, or persons, for necessary services, including personal services, as he may deem practicable."

Public Numbered 2 (thus referred to) enacted in 1933, includes the provision which is now § 705 of title 38 (see 48 Stat. p. 9, § 5). Thus 38 U.S.C.A. § 705 was in effect reenacted in June, 1944 to apply to the benefits created in § 701(f). Sec. 705 applies to cases involving readjustment payments to veterans also authorized by the Readjustment Act of 1944. International Union, United Automobile, Aircraft

and Agricultural Implement Workers of America v. Bradley, D.C.D.C.1948, 75 F. Supp. 394.

It is also my view that the provision for educational and vocational training to veterans is in the nature of a gratuity, as are pensions, that may be granted or withheld in the wisdom of Congress. See Barnett v. Hines, 70 App.D.C. 217, 105 F.2d 96, certiorari denied 308 U.S. 573, 60 S.Ct. 88, 84 L.Ed. 480; Slocumb v. Gray, D.C., 82 F.Supp. 125; Metropolitan Training Center v. Gray,[1] D.C.D.C., Memo. opinion October 14, 1949, Judge McGuire. Such gratuities are, of course, quite different from veterans' contractual rights under war risk insurance policies. Lynch v. United States, 292 U.S. 571, 577, 54 S.Ct. 840, 78 L.Ed. 1434. If, as I think is clearly the case, § 705 does apply to the educational rights in § 701(f) the present suit in which plaintiff seeks to review the administrative decision cannot be maintained. Van Horne v. Hines, 74 App.D.C. 214, 122 F.2d 207, certiorari denied 314 U.S. 689, 62 S.Ct. 360, 86 L.Ed. 552; Snauffer v. Stimson, 81 U.S.App.D.C. 110, 155 F.2d 861; International Union, United Automobile, Aircraft and Agricultural Implement Workers of America v. Bradley, D.C., 75 F.Supp. 395. In seeking to establish the right to judicial review the plaintiff here relies largely on Stark v. Wickard, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733. But that case is not pertinent here because in the Act there involved Congress was silent as to judicial review, which is not the situation here.

Plaintiff's counsel apparently argue that the plaintiff obtained some vested rights under the Servicemen's Act. But this is a misconception. The plaintiff in this case has no greater rights that the veteran himself would have. The benefits are granted by the statute to the veterans and not created for the benefit of the school. There is no obligation upon the Administrator to enter into contracts with schools for unreasonably high rates of tuition, which he does not approve.

In my opinion the Administrator is an indispensable party to this suit. His was the final administrative decision in the matter. Before that could properly be reversed he is entitled to be heard. The court is asked to require the defendants who are officials of lower rank than the Administrator, to make a ruling contrary to their superior's determination; and after the plaintiff has pursued the authorized administrative procedure by unsuccessfully appealing from the Regional Office to the Central Office of the Veterans Administration. Counsel for the plaintiff rely on Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95; Brougham v. Blanton Mfg. Co., 8 Cir., 243 F. 503, 506, reversed on another point, 249 U.S. 495, 39 S.Ct. 363, 63 L.Ed. 725, which, however, are in their factual situations not applicable to this case.

As already pointed out, the relief here sought is not in substance an injunction against an unauthorized and harmful act but an affirmative mandate to do something which would confer a benefit. That Williams v. Fanning does not really support the plaintiff's position here comes out clearly enough in the following sentence in the opinion in that case: "These cases evolved the principle that the superior officer is an indispensable party if the decree granting the relief sought will require him to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him." 332 U.S. 493, 68 S.Ct. 189. See also Ainsworth v. Barn Ballroom Co., 4 Cir., 157 F.2d 97, 101; Daggs v. Klein, 9 Cir., 169 F.2d 174, 176; American Communications Association v. Schauffler, D.C., 80 F.Supp. 400; White v. Douds, D.C., 80 F.Supp. 402, 406.

The plaintiff refers to a sentence in the contract which it executed reading as follows: "It is understood and agreed between the parties herein that the execution of this contract will not affect the rights and liabilities of either of the parties with regard to change 4 of Veterans Ad-

---

1. No opinion for publication.

ministration Manual M 7-5." (Change 4 here referred to is the regulation involved in this case). It is urged that this provision in the contract constituted in effect an assent by the Administrator to the jurisdiction of the court in this case; but I do not construe the provision as having that effect either as a matter within the authority of the Administrator to consent to or by the proper interpretation of the wording used. Reference has already been made to the statement contained in Mr. Monk's last letter to the plaintiff to the effect that if the regulation was judicially determined to be invalid, the tuition rates to be paid to the plaintiff would be those it was demanding. It seems more reasonable to me to interpret the sentence as written in the contract as having relation to the validity of the regulation by a court having jurisdiction of the subject matter and the parties rather than as an assent to the exercise of jurisdiction by a court which otherwise would not have it. See also the affidavit of Mr. Monk filed in connection with the motion to dismiss. In this connection Mr. Monk's letter referred to a particular suit then pending in the United States District Court for the District of Columbia entitled Metropolitan Training Center, Inc., v. Carl R. Gray, which had been brought to decide the validity of the regulation. In that case the District Court dismissed the suit on the ground that it was in effect an attempted suit against the United States without its consent. I am not referred to any judicial decision in which the regulation has been held invalid.

 The United States cannot be sued without its consent, and for that reason also this case must be dismissed. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; Cunningham v. Macon & B. R. Co., 109 U.S. 446, 3 S.Ct. 292, 609, 27 L.Ed. 992. The declaratory Judgment Act, 28 U.S.C.A. § 2201, does not add to the jurisdiction of the federal courts or create any new substantive right but is only a procedural statute for use in cases where there is authorized federal jurisdiction. Di Benedetto v. Morgenthau, 80 U.S.App.D.C. 34, 148 F.2d 223; Miles

Laboratories v. Federal Trade Commission, 78 U.S.App.D.C. 326, 140 F.2d 683, certiorari denied 322 U.S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582. The ultimate purpose of this proceeding is to obtain moneys from the public treasury. It thus constitutes in effect an unauthorized suit against the United States: Mine Safety Appliances Co. v. Forrestal, 326 U.S. 371, 694, 66 S.Ct. 219, 90 L.Ed. 140; Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457; Metropolitan Training Center v. Gray (D.C.D.C.) supra.

It is also well settled that district courts (at least outside of the District of Columbia) have no original jurisdiction to issue writs of mandamus or orders in the nature of writs of mandamus in the absence of special statutory authority. Smith v. Bourbon County, 127 U.S. 105, 88 Ct. 1043, 32 L.Ed. 73; Covington & C. Bridge Co. v. Hager, 203 U.S. 109, 27 S.Ct. 24, 51 L.Ed. 111; Branham v. Langley, 4 Cir., 139 F.2d 115. The mandatory injunction is in effect equivalent to a writ of mandamus and should be governed by like considerations. Miguel v. McCarl, 291 U.S. 442, 54 S.Ct. 465, 78 L.Ed. 901.

For all these reasons I conclude that the complaint must be dismissed with taxable court costs allowed. Counsel are requested to submit the appropriate order in due course.